Patrick E. Johnson
pjohnson@ck.law
COHNE KINGHORN, P.C.
111 E. Broadway, 11th Floor
Salt Lake City, Utah 84111
(801) 363-4300

John Gleeson
Farhana Choudhury
jgleeson@debevoise.com
fchoudhury@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*(admitted pro hac vice)*

*Attorneys for Defendant Kepa Maumau*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**v.**<br><br><br>**KEPA MAUMAU,**<br>　　　　　　　**Defendant.** | **MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**<br><br><br>Case No.  2:08-CR-00758-TC-11<br><br>Judge Tena Campbell |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

DISCUSSION ................................................................................................................. 4

A.    The Court Has Jurisdiction to Grant Release for Extraordinary and Compelling Reasons. ................................................................................................................. 4

B.    The Relief Requested Here Is Consistent with both the Text of the Statute and the Commission's Policy Statements. ..................................................................... 6

    1.    Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances. ..................................................... 6

    2.    The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances. ............................................................... 7

    3.    Extraordinary and Compelling Circumstances Warrant a Reduction in Maumau's Sentence. .................................................................................. 10

C.    The Criteria for Reassessing the Length of Maumau's Sentence Weigh Strongly in Favor of a Sentence Reduction. ........................................................................ 11

    1.    Maumau Is Not a Danger. .................................................................................. 11

    2.    The § 3553(a) Factors Weigh Strongly in Favor of Relief. ................................. 13

D.    Maumau Is Deserving of Mercy. ..................................................................... 14

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

Page

**CASES**

*Alleyne v. United States*, 570 U.S. 99 (2013) ........................................................................ 1, 3

*United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505 (M.D.N.C. June 28, 2019) ......... 10

*United States v. Booker*, 543 U.S. 220 (2005) ....................................................................... 8

*United States v. Cantu*,
  No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex. June 17, 2019) .............................. 5, 9, 10

*United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272 (S.D. Tex. June 24,
  2019) .......................................................................................................... *passim*

*United States v. Da Cai Chen*, 127 F.3d 286 (2d Cir. 1997) ........................................................ 8

*United States v. Maumau*, 12-4007 (10th Cir. 2014) ................................................................ 1

*United States v. Maumau*, No. 2:08-CR-00758-TC ................................................................. 1

*United States v. Maumau*, No. 2:15-CV-00600-TC ............................................................... 1, 2

*United States v. McGraw*, No. 2:02-CR-00018 (LJM)(CMM), 2019 WL 2059488 (S.D.
  Ind. May 9, 2019) ................................................................................................... 9

*United States v. Pierninanzi*, 23 F.3d 670 (2d Cir. 1994) ............................................................ 9

*United States v. Simons*, No. 07-CR-00874, 2019 WL 1760840 (E.D.N.Y. Apr. 22, 2019) ......... 14

**STATUTES**

18 U.S.C. § 924(c) ................................................................................................. 1, 2, 3, 10, 14

18 U.S.C. § 3142(g) ............................................................................................................. 11

18 U.S.C. § 3553(a) .................................................................................................... 11, 13, 14

18 U.S.C. § 3582 .......................................................................................................... *passim*

28 U.S.C. § 992(a)(2) ........................................................................................................... 7

28 U.S.C. § 994(t) ............................................................................................................... 7

28 U.S.C. § 2255 ................................................................................................................ 1

PL 98-473, 98 Stat 1837 ....................................................................................................... 5

P.L. 115-391, 132 Stat. 5194 ........................................................................................2, 5

U.S.S.G. § 1B1.13.................................................................................8, 9, 10, 11

OTHER AUTHORITIES

28 CFR § 571.61 .......................................................................................................3

*FCC Pollock Inmate Admission & Orientation Handbook* (revised October 2018),
     https://www.bop.gov/locations/institutions/pom/pox_ao_handbook121018.pdf. ....................3

*The Answer is No:  Too Little Compassionate Release in US Federal Prisons*, Human
     Rights Watch (Nov. 2012), https://www.hrw.org/sites/default/files/reports/ ...........................7

S. Rep. No. 98-225....................................................................................................6, 7

Defendant, Kepa Maumau, through counsel, respectfully moves this Court for an order reducing his sentence based on the "extraordinary and compelling reasons" discussed below, pursuant to the recently-amended 18 U.S.C. § 3582(c)(1)(A)(i).  We also request oral argument on this motion.

## INTRODUCTION

Maumau was sentenced in 2011 to a mandatory 57-year term of imprisonment following his conviction for his involvement in a series of robberies.  In 2013, Maumau was resentenced to 55 years following the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013).  Maumau's entire term of imprisonment was imposed pursuant to three convictions under 18 U.S.C. § 924(c), which forced Your Honor to impose mandatory consecutive terms totaling 55 years.  Maumau was sentenced when he was 24 years old and has now served over 10 years of that sentence.  His projected release date of July 4, 2057 is almost four decades away.

At Maumau's sentencing in 2011, the Court voiced disagreement with the mandatory sentence it was required to impose.  Maumau's defense counsel stated, "we as a society have failed when we send a young man like this to prison for 57 years," and Maumau expressed his hope that "something happens through appeals."  *United States v. Maumau*, No. 2:08-CR-00758-TC, Sentencing Tr. at 9, ECF No. 1391.  *Id.* at 9-10.  Your Honor agreed:  "Right.  I never hope for [a successful appeal] because that means that I made a mistake.  But what I hope is that there is some way because this is the sentence that I'm going to impose, I must, but I think what's been said is accurate."  *Id.* at 10.  Unfortunately for Maumau, his post-conviction motions were unsuccessful.[1]  Years later, Your Honor reiterated that Maumau's sentence was "offensive and

---

[1]     Maumau's conviction was affirmed on appeal on April 8, 2014.  *United States v. Maumau*, 12-4007 (10th Cir. 2014).  On June 27, 2016, Maumau filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  *United States v. Maumau*, No. 2:15-CV-00600-TC, ECF No.

unjust" and expressed your "distaste with the mandatory sentence [you were] required to impose on Mr. Maumau."  Letter from the Honorable Tena Campbell to U.S. Attorney John W. Huber (April 30, 2019) (attached hereto as "**Ex. A**").

On August 13, 2019, Maumau submitted a written request to the Warden of USP Pollock asking that he move this Court for a reduction of Maumau's sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  As of the date of this filing, the warden has not filed a motion with this Court on Maumau's behalf.

Thanks to the amendments to § 3582(c)(1)(A) that were enacted as part of the First Step Act, the Court is now empowered to bring a measure of justice to Maumau's sentence, and we ask the Court to do just that for the reasons set forth below.  *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018).

## FACTUAL BACKGROUND

In 2008, Kepa Maumau engaged in three robberies across Utah and Arizona.[2]  Maumau, along with several co-defendants, was charged with racketeering conspiracy, Hobbs Act robbery, separate counts of assault with a dangerous weapon in aid of racketeering for each robbery, and three firearm counts brought under § 924(c).  The government offered Maumau a plea deal that, if accepted, would have resulted in a 10-year sentence.  Instead, Maumau declined the offer, proceeded to trial, and he was convicted on October 6, 2011.

---

8.  The motion was denied on August 10, 2017.  *United States v. Maumau*, No. 2:15-CV-00600-TC, Order, ECF No. 36.

[2]    On August 12, 2008, Maumau and an unidentified male entered a Gen-X Clothing store in Ogden, Utah.  They took approximately $7,000 in cash and merchandise.  On August 19, 2008, Maumau and Edward Kamoto stole approximately $505 from an El Pollo Loco restaurant in Tempe, Arizona.  Immediately after, Maumau and Kamoto robbed a Jack-in-the-Box restaurant, also in Tempe, Arizona.  No one was physically injured during these robberies.

2

At trial, one co-conspirator, Edward Kamoto, cooperated with the government and testified against Maumau and other co-defendants; in exchange, the government agreed not to seek an indictment against Kamoto.  As for Maumau, he was sentenced to a term of 57 years:  seven years for the first § 924(c) conviction; 25 years for the second; and 25 years for the third, all to run consecutively.  Maumau's entire sentence is due solely to the stacked § 924(c) counts.  As mentioned above, after the *Alleyne* decision, the seven-year sentence for the first § 924(c) conviction was reduced to five years, and the total sentence became 55 years.

Maumau's co-defendants who pled guilty after engaging in similar conduct fared far better.  George Pupunu pled guilty to one count of racketeering conspiracy and one § 924(c) count and was sentenced to a 10-year term of imprisonment.  Another co-defendant, Peter Tuiaki, pled guilty to the same two counts as Mr. Pupunu, and was sentenced to 12 years in prison.

On August 13, 2019, Maumau submitted a written request to the Warden of USP Pollock asking that he move this Court for a reduction of Maumau's sentence under 18 U.S.C. § 3582(c)(1)(A)(i).[3]  As of the date of this filing, over 30 days from the time Maumau submitted his request, the warden has not filed a motion with this Court on Maumau's behalf.

---

[3]     On September 7, 2019, Maumau notified counsel that he was informed by the unit manager at his facility that the warden does not review compassionate release petitions.  On September 13, counsel called Executive Assistant Jackson at USP Pollock for information regarding processes for an inmate to submit a compassionate release motion pursuant to 18 U.S.C. § 3582.  The Executive Assistant has "oversight over the areas of the Legal Department, Administrative Remedies, [and] Tort Claims . . . ." *FCC Pollock Inmate Admission & Orientation Handbook* (revised October 2018), *available at* https://www.bop.gov/locations/institutions/pom/pox_ao_handbook121018.pdf.  Counsel left a voicemail on September 13 and followed up by email on September 18.  Ms. Jackson responded on September 23, with a request for our client's name and BOP number and provided the text of 28 CFR § 571.61.  On September 27, counsel responded to Ms. Jackson to confirm receipt of the

## DISCUSSION

The Court now has the authority to reduce Maumau's sentence based on the extraordinary and compelling circumstances presented here.  *First*, it has the jurisdiction to hear this motion because more than 30 days have elapsed since Maumau submitted his request to the warden, and the Director of the BOP has not filed a motion with this Court.  *Second*, the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have finally vested *the Court* with the authority to decide when extraordinary and compelling circumstances warrant a sentence reduction.  *Third*, as this Court is already aware, the circumstances presented here cry out for a sentence reduction.

### A.  The Court Has Jurisdiction to Grant Release for Extraordinary and Compelling Reasons.

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984.  It provided that a district court could not modify a final term of imprisonment except in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court.  But although the courts had the final decision-making authority over whether a sentence would be reduced, the statute imposed a gatekeeper—that authority could be invoked only upon a motion by the Director of the BOP.  Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons

---

information and that Maumau followed the appropriate procedure in submitting his request for compassionate release to the warden.  On October 3, counsel received a call from a case manager at USP Pollock, Bradley Coburn, who said he was notified that counsel reached out regarding Maumau's request to the warden, but he was not aware whether Maumau had submitted anything to the warden.  Mr. Coburn represented he would follow-up on the status of the request.  As of the date of this filing, counsel has received no additional response from USP Pollock regarding Maumau's petition to the warden.

warranted the reduction.   18 U.S.C. § 3582(c)(1)(A)(i); *see also* PL 98-473, 98 Stat 1837 (Oct. 12, 1984).

That changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A).  *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018).  Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in *two* circumstances:  (i) if the Director of the BOP files a motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier.   18 U.S.C. § 3582(c)(1)(A); *see also United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("Under the newly amended § 3582(c)(1)(A) [the defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response."); *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (defendant's "petition . . . meets the requirement of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The Court therefore has the authority to address the motion of the defendant.").  As noted above, Maumau submitted his request to the warden at his facility on August 13, 2019.  As of the date of this filing, more than 30 days after Maumau submitted his request, the Bureau of Prisons has neither denied Maumau's application nor filed a motion with this Court on Maumau's behalf. Accordingly, Maumau is entitled to bring his motion directly to the Court pursuant to 18 U.S.C. § 3582(c)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

**B. The Relief Requested Here Is Consistent with both the Text of the Statute and the Commission's Policy Statements.**

1. Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances.

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(c). Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to make those determinations on a case-by-case basis, and to reduce fundamentally unfair sentences where such reasons exist.

Congress's initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52, 53 n.74 (1983). But with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process. It therefore allowed for judicial reduction of certain sentences under § 3582(c):

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which *other extraordinary and compelling circumstances* justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defend[ant] was convicted have been later amended to provide a shorter term of imprisonment.

*Id.* at 55-56 (emphasis added). Put differently, rather than having the Parole Commission review every federal sentence, Congress decided to let sentencing courts decide, in a far narrower band of cases presenting extraordinary and compelling circumstances, if "there is a justification for reducing a term of imprisonment." *Id.* at 56.

The situations listed in § 3582(c) were thus intended to serve as "safety valves for modification of sentences," enabling sentence reductions when justified by factors that previously could have been addressed through the (now abolished) parole system. *Id.* at 121.

6

This approach was intended to keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, and it permitted "later review of sentences in particularly *compelling situations*." *Id*. (emphasis added).   Notably, Congress imposed no limitations on courts' authority to make such determinations, declining to define what constitutes "extraordinary and compelling reasons" or to otherwise constrain judges' discretion.   The mandate was simple:   If extraordinary and compelling circumstances were present, they would "justify a reduction of an unusually long sentence."   S. Rep No. 98-225, at 55-56.

Unfortunately, the establishment of the BOP as a gatekeeper effectively eliminated the safety valve.   The BOP, which is of course part of the Department of Justice, hardly ever opened the gate.[4]   As a result, Congress, through the First Step Act, allowed direct access to the sentencing court once an inmate's request to the BOP has been exhausted.

> 2. The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances.

When enacting § 3582(c), Congress delegated the responsibility for expounding upon what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission").   *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18").   The resulting policy statement by the Commission sets forth the following factual considerations:   (i) the medical condition of the defendant

---

[4]     *See, e.g.*, *The Answer is No:   Too Little Compassionate Release in US Federal Prisons*, Human Rights Watch, at 2 (Nov. 2012), https://www.hrw.org/sites/default/files/reports/us1112ForUploadSm.pdf (noting that between 1992 and 2012, the average annual number of prisoners who received compassionate release following a motion by the BOP was less than two dozen).

(including terminal illness and other serious conditions and impairments); (ii) the age of the defendant (for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment); (iii) the family circumstances of the defendant (where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver); and (iv) "other reasons" as determined by the BOP.  U.S.S.G. § 1B1.13, Application Note 1(A).   The fourth category specifically includes "an extraordinary and compelling reason other than, or in combination with," the first three.  *Id.*  Additionally, the commentary makes clear that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment."   U.S.S.G. § 1B1.13, Application Note 2.   In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction."  *Id*.

As the above language makes clear, extraordinary and compelling reasons for a sentence reduction may exist even when an inmate is not elderly, ill, or facing complicated family circumstances.   And though the policy statement—which has not been amended since the passage of the First Step Act—vests the Director of the BOP with the authority to determine when such "other reasons" might warrant a reduction in a particular case, that language is now irreconcilable with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without any response from the BOP or even if the BOP expressly decides that no reasons warrant a reduction of sentence.   Accordingly, that aspect of the commentary is not binding on the courts for two reasons:  (1) the Guidelines are advisory only, *see United States v. Booker*, 543 U.S. 220 (2005); and (2) it is inconsistent with the text and the undisputed purpose of the First Step Act.  *See United States v. Da Cai Chen*, 127 F.3d 286, 291 (2d Cir. 1997) (commentary that

relates to a statute, or to a guideline that mirrors a statute (as here), is not entitled to deference); *see also United States v. Pierninanzi*, 23 F.3d 670, 683 (2d Cir. 1994).  Indeed, at least three district courts, since the passage of the First Step Act, have observed that § 1B1.13 "has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release," *United States v. McGraw*, No. 2:02-CR-00018 (LJM)(CMM), 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019), and "[b]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect." *Cantu-Rivera*, 2019 WL 2578272, at *2 n.1; *see also Cantu*, 2019 WL 2498923, at *4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under § 3852.").

The Court's authority to reduce Maumau's sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encouraging the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note."  As mentioned above, in amending the language of 18 U.S.C. § 3582(c)(1)(A), Congress finally empowered *courts* to make this critical determination, even in the face of a BOP determination that a defendant's case is not extraordinary or compelling.

Thus, just a few months ago, a district court in Texas held as follows:

> [T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements 'at any time' [. . .]—is that when a defendant brings a motion for

sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G § 1B1.13 cmt. N.1(A)-(C) warrant granting relief.

*Cantu*, 2019 WL 2498923, at *5. This Court, therefore, may make an independent assessment of Maumau's case in considering whether extraordinary and compelling reasons warrant the reduction of his sentence.[5]

3. Extraordinary and Compelling Circumstances Warrant a Reduction in Maumau's Sentence.

The practice of "stacking" enhanced § 924(c) charges in a first offense has received wide condemnation for many years. Finally, last December, this practice was eliminated. The government can no longer invoke the dramatically enhanced mandatory consecutive sentences prescribed for "second or successive" § 924(c) convictions in the same case in which the first such conviction is obtained. From now on, those staggering sentences will be permissible only after a truly "subsequent" conviction. Notably, the fact that this amendment was titled a "Clarification of Section 924(c)" makes clear that § 924(c) was never intended by Congress to result in sentences like the one at issue here. That fact alone constitutes an extraordinary and compelling basis for a reduction of sentence.

---

[5]     *See also Cantu*, 2019 WL 2498923, at *4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582."); *Cantu-Rivera*, 2019 WL 2578272, at *2 n.1 (finding authority to determine that defendant was entitled to relief under the catch-all provision in the commentary to § 1B1.13 because the "current policy statement predates the enactment of the First Step Act and is not likely to be amended within the foreseeable future due to lack of a sufficient number of serving members of the Sentencing Commission."); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

In addition, a motion for relief under 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to consider other factors that may warrant relief, including the defendant's rehabilitation, the sentencing disparities with his co-defendants, and other factors bearing on the person Maumau is today. *See also Cantu-Rivera*, 2019 WL 2578272, at *2 (the court considered rehabilitation and the "unwarranted [sentencing] disparities among defendants" in determining resentencing was appropriate). As set forth below, these factors further establish the sort of "extraordinary and compelling reasons" that warrant a reduction of Maumau's 55-year sentence.

### C. The Criteria for Reassessing the Length of Maumau's Sentence Weigh Strongly in Favor of a Sentence Reduction.

In determining whether Maumau's sentence should be reduced, the Court must decide, *inter alia*, whether Maumau presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). If he does not, the Court looks to the factors outlined in 18 U.S.C. § 3553(a). As explained below, all of these factors weigh strongly in favor of relief in Maumau's case.

### 1. Maumau Is Not a Danger.

If Maumau was released, he would not pose a danger to the community. He committed his crimes as a young man with no criminal record. No one was physically injured as a result of Maumau's crimes. In fact, the victim of one of Maumau's crimes, Mr. Jaehen Cho, who was a witness at the trial, has voiced support for sentencing relief for Maumau. Mr. Cho agrees that Maumau deserves a chance to be released from prison. Mr. Cho's support spotlights the excessive nature of the mandatory consecutive sentences the Court was forced to impose. Maumau's co-defendants—who were no less culpable—received far more lenient sentences, while Maumau continues to serve an egregiously long sentence. Nothing in the facts of this case

or in Maumau's history indicates that he would be a danger if released or otherwise militates against the sentence reduction requested here.

When Maumau was arrested in 2008, he was only 20 years old, with no prior adult record.  Like many others, he was young, impressionable, and had sought guidance in all the wrong places.  At the time of his arrest, Maumau had a promising future as a college football player.  However, he also struggled with alcohol and marijuana usage from the age of 14.  Maumau has since accepted responsibility for his poor choices and dedicated himself to becoming a better person during the decade he has spent incarcerated.  While in prison, he has worked hard to better himself and has participated in over 400 hours of educational and wellness courses—including business and management, communication, personal finance, marketing, software, brain fitness, lifelong health, employment, and parenting.  Maumau is currently also a participant in the Challenge Program, a cognitive behavioral treatment program focused on treating substance abuse and behavioral therapy.

The fact that Maumau will be an asset to the community, rather than a danger, is further demonstrated by the multiple offers of employment that have already been extended to him.  Maumau has secured a job offer from Propak Corporation in Salt Lake City, a large local employer specializing in construction supply-chain and transport.  Letter from Lea Lani Kinikini, Ph.D. (August 22, 2019) (attached hereto as "**Ex. B**").  The College is also committed to providing Maumau with student support services, such as an assigned advisor from the School of Applied Technology for individual career guidance and participation in a recidivist risk reduction mentoring program ("Brother-2-Brother") supporting men of color transitioning from corrections institutions.  *Id*.  Masa Tukuafu, who knew Maumau when he was attending college and is the owner of a restaurant and catering business in Mesa, Arizona, is also prepared to hire Maumau.

Letter from Masa Tukuafu (September 5, 2019) (attached hereto as "**Ex. C**"). Tukuafu believes that Maumau was "a great kid and deserves a second chance." *Id.*

Maumau has strong family support, which will serve as his bedrock should he be released. He has maintained close ties, not only to his parents, siblings, and extended family, but to his community, many of whom wrote letters to the Court emphasizing their support during and after Maumau's trial. Maumau has indicated a strong desire to give back to his community. He pictures himself guiding the local youth in Utah and becoming someone youth can look up to— the role model that Maumau never had. Backed by this support, and in light of his history, there is no reason to believe Maumau would present a danger to society.

2.   The § 3553(a) Factors Weigh Strongly in Favor of Relief.

This Court must next weigh the factors set forth in 18 U.S.C. § 3553(a) to determine whether Maumau's motion for a sentence reduction should be granted. As discussed above, the history and nature of Maumau's involvement in the robberies, in which no one was physically injured, coupled with an adult record devoid of any other criminal offenses, weigh in favor of a reduced sentence. Maumau's role and participation in the robberies and his juvenile criminal history were the actions of a misguided young man who has already spent the last decade in prison. He has maintained strong family ties and has used his time while incarcerated to complete numerous educational courses.

The 10 years Maumau has already served in prison have been transformative for him. Maumau has dedicated himself to his rehabilitation, personifying the objectives of § 3553(a)(2) that incarceration "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." This factor weighs heavily in support of granting relief. *See Cantu-Rivera*, 2019 WL 2578272, at *2 (recognizing the "extraordinary degree of

13

rehabilitation" Mr. Cantu-Rivera accomplished and caring for other inmates as factors justifying the reduction in his sentence). The time Maumau has already served is more than sufficient to achieve the objectives of his sentence and incarceration, including to deter similar misconduct.

Finally, this Court should also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6); *see also Cantu-Rivera*, 2019 WL 2578272, at *2 (finding a reduced sentence would "also avoid unwarranted disparities among defendants with similar records convicted of similar conduct" because defendant's time served "exceeds the sentences imposed on other members of the drug-trafficking conspiracy."). This factor, too, weighs strongly in favor of a sentence reduction for Maumau. As noted above, there is a glaring unwarranted disparity between Maumau's sentence and those of his co-defendants, who engaged in the same conduct as Maumau but pled guilty. Maumau's codefendant George Pupunu pled guilty to one count of racketeering conspiracy and one § 924(c) count and was sentenced to 10 years of imprisonment. Another codefendant, Peter Tuiaki pled guilty to the same two counts as Pupunu and was sentenced to 12 years of imprisonment. And, as stated above, Edward Kamoto, who took part in two of the three robberies with Maumau was not even charged because of his cooperation with the government. Even taking into account credits for accepting responsibility and for providing substantial assistance to the government, there are extraordinary disparities in this case, and they appear to be based solely on the fact that Maumau elected to exercise his constitutional right to a jury trial.

### D.  Maumau Is Deserving of Mercy.

With the passage of the First Step Act, Congress emphasized the imperative of reducing unnecessary incarceration and avoiding unduly punitive sentences that do not serve the ends of justice. *United States v. Simons*, No. 07-CR-00874, 2019 WL 1760840, at *8 (E.D.N.Y. Apr. 22,

2019).  The repercussions of Maumau's excessively harsh sentence cannot be overstated.  At the time of his arrest, Kepa Maumau was 20 years old.  He had no prior adult record.  Maumau had a pleasant childhood, growing up close to his parents, siblings, and extended family.  He had attended college, and had a promising future as a college football player.  Throughout his incarceration, even without any hope of parole, Maumau has maintained an optimistic and positive outlook on life.  As described above, Maumau has completed over 400 hours of educational courses, and engages in active self-study.

Maumau spends a lot of time thinking about his purpose in life and what he wants to leave behind in the world.  He has advised others in prison to do the same and to live a clean life once released.  Through his actions and his words, Maumau exhibits deep remorse for the serious crimes he committed.  He reflects on the decisions that he previously made on a daily basis and deeply regrets his criminal conduct.  Maumau's experiences have shaped him into the man he is today and the man that he will be if he is released.  Maumau has kept his faith in the justice system, and he has an unwavering commitment to becoming a productive member of society if given a second chance.  He has a family ready to support him and a life to build if released—a life for which he has been preparing for a decade, despite a sentence that would suck the will to live out of many.  Maumau's conduct in prison, participation in rehabilitation programs, and pronounced efforts in learning and improving himself all demonstrate that he is deserving of the relief we seek.

When Maumau was sentenced in 2011, this Court agreed that "we as a society have failed when we send a young man like this to prison for [55] years" and expressed hope "that there is some way" for Maumau to get relief from this injustice.  There is now finally a way.  The First Step Act authorizes this Court to reduce Maumau's sentence to a more just term of

imprisonment.  Thus, we respectfully ask this Court to recognize that Maumau deserves mercy and redemption.

## **CONCLUSION**

Congress never intended to permit, let alone to mandate, the excessive punishment Maumau received in this case.  It has now given the Court the power to grant Maumau relief from that sentence.  Maumau respectfully requests that the Court find that there are extraordinary and compelling reasons warranting a reduction in Maumau's sentence, and reduce his sentence accordingly.


Dated:  New York, New York
           October 15, 2019


Respectfully submitted,


COHNE KINGHORN, P.C.

By:  /s/ Patrick E. Johnson

Patrick E. Johnson (pjohnson@ck.law)


DEBEVOISE & PLIMPTON LLP

By:  /s/ John Gleeson

John Gleeson (jgleeson@debevoise.com)
Farhana Choudhury (fchoudhury@debevoise.com)

(*admitted pro hac vice*)


*Attorneys for Kepa Maumau*