Patrick E. Johnson (10771)
pjohnson@ck.law
COHNE KINGHORN, P.C.
111 E. Broadway, 11th Floor
Salt Lake City, Utah 84111
(801) 363-4300

John Gleeson (1820992 New York)
Farhana Choudhury (5478797 New York)
jgleeson@debevoise.com
fchoudhury@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*(admitted pro hac vice)*

*Attorneys for Defendant Kepa Maumau*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**v.**<br><br><br>**KEPA MAUMAU,**<br><br>        **Defendant.** | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**<br><br><br>Case No.  2:08-CR-00758-TC-11<br><br>Judge Tena Campbell |

Defendant Kepa Maumau, through counsel, respectfully submits this reply memorandum in further support of his motion for an order reducing his sentence based on extraordinary and compelling reasons, pursuant to the recently-amended 18 U.S.C. § 3582(c)(1)(A)(i).

## PRELIMINARY STATEMENT

The government's bloated opposition to our motion for a sentence reduction cannot obscure the simple facts and straightforward law on which it is based.

Because it could, the government required Kepa Maumau to pay a breathtaking price for exercising his constitutional right to trial by jury. Invoking mandatory sentencing enhancements that were so grossly excessive and cruel that Congress has since made sure no one in Maumau's circumstances will ever again face them, the government imposed a *45-year* trial penalty on this young man. In the meantime, Maumau has successfully struggled with the issues he faced as an adolescent and has grown up. He is an adult now in every sense, and he has made great strides to ready himself for re-entry at the end of whatever term to which this Court, in its wisdom, reduces his shockingly high 55-year sentence. We urge the Court to gauge Maumau's readiness for itself by having him brought to the district, where he can be interviewed by Probation and perhaps have the opportunity to address the Court. We respectfully suggest that you will agree that his case presents extraordinary and compelling circumstances.

The legal basis for our motion is just as straightforward. Because it almost never opened the gate, the Bureau of Prisons has finally been removed as the gatekeeper for motions for sentence reductions under 18 U.S.C. § 3582(c)(1)(A). The government concedes that the amended statute trumps the Sentencing Commission's guidelines and policy statements, and thus agrees that this Court must disregard the BOP motion requirement on the face of (and also in the commentary to) U.S.S.G. § 1B1.13. But it then

1

contends that BOP remains the gatekeeper when it comes to just one of the authorized bases for a sentence reduction—the one on which Maumau relies, of course.  This surgical retention of BOP control has no basis in the text of the statute, and the government does not contend otherwise.  And considering that the section of the First Step Act that took BOP out of the middle was titled "Increasing the Use and Transparency of Compassionate Release," the government's contorted argument certainly has no basis in logic.  Instead, the government asserts that leaving the BOP—which to our knowledge has literally *never* made a motion based on extraordinary and compelling circumstances (other than for medical condition, age, and final circumstances)—in charge of such motions accords with an unspecified "basic premise" of "severability doctrine" it neither identifies nor even attempts to support with authorities.

The government's opposition offers more heat than light.  The heat is the natural reaction to a diminution of the government's power over sentencing outcomes.  As this Court knows, there was no judging involved in determining the length of Maumau's sentence; the government's decisions commanded the sentence that is more than double the average federal sentence for murder.[1]  Congress has finally given judges a role in cases like this one.  It is narrow to be sure, limited as it is to cases presenting extraordinary and compelling circumstances, so there is little reason for the government to panic.

The sentence in this case is indefensible.  It bears no relationship at all to the severity of the offense conduct.  Forty-five years of it was punishment not for that conduct, but for Maumau's decision to put the government to its proof.  And it was imposed on a

---

[1]    The average sentence for murder in federal courts in Fiscal Year 2018—the most recent for which data are available on the Sentencing Commissions website—was 291 months.  *See* United States Sentencing Commission, Sourcebook of Federal Sentencing Statistics, Fiscal Year 2018, Table 15, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/Table15.pdf.

young man who, from a neuroscience perspective, was still an adolescent when he committed the crimes.  Now he is a mature man, and this Court has the authority to administer justice by reducing a sentence that shames us all.

## DISCUSSION

### A.  The Court Has the Authority to Determine Extraordinary and Compelling Reasons.

In the aftermath of the First Step Act, the Court now has the authority to determine "extraordinary and compelling reasons" for a sentence reduction, even when an inmate is not elderly, ill, or facing complicated family circumstances, as contemplated in USSG § 1B1.13, Application Note 1(D).  The government erroneously contends otherwise.

The First Step Act, "[l]ike other sentencing statutes, . . . trumps the Guidelines."  *Dorsey v. United States*, 567 U.S. 260, 266 (2012).  Thus, though the first words of the relevant policy statement, U.S.S.G. § 1B1.13, require a "motion of the Director of the Bureau of Prisons" before any sentence reduction can be ordered under § 3582(c)(1)(A), the government concedes that prerequisite must be ignored.  *See* Government's Opposition ("Opp'n") at 9-10, ECF No. 1740.  And though the commentary also requires such a motion, *see* § 1B1.13, Application Note 4, the government concedes that must be ignored as well.  Opp'n at 14.  But the government contends there is a single mention of the BOP in the Application Notes that the amendments to the compassionate release statute somehow left untouched.  Specifically, it asserts that Congress left the BOP as the sole arbiter—the gatekeeper who never opens the gate—when it comes to one avenue of relief under the statute, that is, sentence reductions based on "other extraordinary and compelling reasons."  All of the references to the BOP in the policy statement and the Application Note can properly be ignored, according to the government, save one: the mention in Application Note 1(D) that a sentence reduction can be ordered based on extraordinary and

3

compelling reasons only when "determined" by the Director of the BOP that such reasons exist

in the case.  *Id*. at 7-8, 13.

The government erroneously states that Maumau argues that the "rest of the policy

statement is also inoperative," and the Court should "disregard the policy statement" entirely.  *Id*.

at 14-15.  That is not our argument.  Rather, since Congress has removed the BOP's blessing as a

prerequisite to relief under § 3582(c), the statute controls and trumps any *contrary* provision in

the policy statement or its application notes that require the assent of the BOP.  *See Dorsey*, 567

U.S. at 266.   This includes the requirement that "other reasons" for a sentence reduction,

pursuant to § 1B1.13, Application Note 1(D), be determined by the BOP.  To construe the effect

of the revised statute as the government proposes would mean that this ground for a sentence

reduction would remain unavailable indefinitely because the BOP has never found that

extraordinary and compelling circumstances (beyond age, infirmity, and caregiver status)

warrant sentence reductions, and it is unlikely that the BOP will do so now.  *See United States v.*

*Ebbers*, No. 02-CR-1144-3, 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020) ("[T]he First Step

Act reduced the BOP's control over compassionate release and vested greater discretion with

courts.  Deferring to the BOP would seem to frustrate that purpose.").

The government cites six cases for the proposition that the policy statement "still defines

the parameters of the 'extraordinary and compelling reasons' that would justify" a sentence

reduction."  *See* Opp'n at 11.  Only three of those cases address Application Note 1 (D) and they

wrongly conclude that the "other reasons" that are "extraordinary and compelling" must be

determined by the BOP.  *Id*. (citing *Willingham*, *Lynn*, and *Shields*).  The remaining three cases

are inapposite.[2]  Moreover, multiple district courts across the country have observed that §

---

[2]      *See United States v. York*, 2019 WL 3241166, *4 (E.D. Tenn. July 18, 2019) (granting motion based on medical condition of defendant); *United States v. McGraw*, No. 2:02-CR-00018, 2019 WL 2059488, at *2 (S.D. Ind.

1B1.13 has not been updated to reflect the amendments to the compassionate release statute, and, given the conflict between the current version and the First Step Act, the revised statutory provisions are what "must be given effect."  *See* Def.'s Motion ("Mot.") at 9, ECF. No 1735 (citing *McGraw*, *Cantu-Rivera*, and *Cantu*); *see also United States v. Brown*, 4:05-CR-00227-1, 2019 WL 4942051, at *4 (S.D. Iowa. Oct. 8, 2019); *Urkevich*, 2019 WL 6037391, at * 3; *United States v. Schmitt*, No. 12-CR-4076, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *United States v. Valdez*, No. 3:98-CR-0133-01, 2019 WL 7373023, at *2 (D. Alaska Dec. 31, 2019) ("This court concludes that it is no longer bound to look to the director of the Bureau of Prisons for a definition of extraordinary and compelling reasons beyond application note 1(A) through (C).").  These decisions are not only consistent with the amended statute and controlling Supreme Court precedent, but they also comport with the language in the policy statement itself, which makes clear that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encourages the filing of a motion for a sentence reduction where a defendant "meets any of the circumstances set forth in [the] Application Note."  U.S.S.G. § 1B1.13, Application Note 4; *see Brown*, 2019 WL 4942051, at *4 (observing the courts' role in "[r]eleasing defendants from incarceration is a delicate business—although not any more so than incarcerating them initially").

At least one district court has already granted the relief we seek in this § 924(c) context. It found that "[a] reduction in [the defendant's] sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed" because of the First Step Act's amendment of § 924(c).  *Urkevich*, 2019 WL 6037391 at *4.  Others have indicated that they

___

May 9, 2019) (same); *United States v. Willis*, 382 F. Supp.3d 1185, 1187 (D.N.M. 2019) (denying motion based on medical condition of defendant).

would be amenable to considering such relief in the future or once an appropriate motion had been made. *See Brown*, 2019 WL 4942051, at \*5-6 (finding that the stacked § 924(c) charges could be the basis for a reduction in sentence based on extraordinary and compelling reasons, but holding the motion was premature because the defendant had not yet served the sentence he would receive today). Numerous such motions are pending in other district courts throughout the country. This Court should join them and hold that it now has the authority to reduce Maumau's sentence based on extraordinary and compelling circumstances.[3]

**B. Maumau's Proferred Reasons are "Extraordinary and Compelling" and Warrant Relief.**

The government contends that even if the Court has the authority to reduce Maumau's sentence, it should not do so. Specifically, it argues that the reduction we seek is not "justified by changed circumstances," and is "largely based on his complaints about the mandatory minimums that were in place at the time of sentencing." Opp'n at 17. Citing the Senate Judiciary Committee Report that accompanied the Comprehensive Crime Control Act of 1984, the government emphasizes that a sentence reduction must be "*justified by changed circumstances,*" but glosses over the remaining portion of the quote, which, after referencing "severe illness," explains that "changed circumstances" warranting relief can also include "other extraordinary and compelling circumstances" that "justify a reduction of an unusually long

---

[3] The government misconstrues an assertion in our initial brief about the advisory nature of the Guidelines. Opp'n at 8 n.2. The Guidelines are not binding here because the language appearing to constrain this Court has been trumped by statute. *Dillon v. United States*, 560 U.S. 817 (2010), stands for an uncontroversial proposition that Maumau does not contest: sentences may not be inconsistent with any applicable Federal Sentencing Guidelines provisions that are constitutional and made binding by statute. However, *Dillon* did not analyze, and thus has no applicability to, situations where new legislation passed by Congress contradicts preexisting sections of the Guidelines. As cited above and in Maumau's initial brief, numerous district courts have found that the statutory changes in the First Step Act trump the contradictory language in the Guidelines and advisory notes. Congress's decision through the First Step Act to strip away the BOP's gatekeeper status over § 3582(c)(i) motions contradicts, and thus supersedes, the Guidelines' language requiring the BOP's input as to what constitutes an extraordinary or compelling reason for relief. *See Dorsey*, 567 U.S at 266. A reduction in Maumau's sentence for extraordinary and compelling reasons as determined by this Court would thus not be inconsistent with the Guidelines. Indeed, it is precisely the result Congress intended. Accordingly, the Court's granting of Maumau's motion would not run afoul of *Dillon*.

6

sentence" and "some cases in which the sentencing guidelines . . . have been later amended to provide for a shorter term of imprisonment." *Id*.

In addition, the truth is that important events *have* occurred after Maumau's sentence was imposed. One is the enactment of the First Step Act. That statute not only amended § 3582(c), it also made clear that the stacking of enhanced § 924(c) sentences to which Maumau was subjected (that is, the imposition of mandatory consecutive 25-year terms for "second or subsequent" § 924(c) convictions in a defendant's first § 924(c) case) was so harsh, and so unintended by Congress, that it had to end.

In the holistic determination we have asked this Court to make, of course that determination matters. We agree that the First Step Act's amendment of § 924(c), which precludes the "stacking" of enhanced mandatory sentences in cases like this one, is not a source of *legal authority* to reduce Maumau's sentence because it was not made retroactively applicable to cases in which a defendant had already been sentenced. But it would be odd indeed to require judges to ignore that seismic amendment to § 924(c) when they consider applications for relief based squarely on other statutes, such as when they determine whether extraordinary and compelling reasons warrant a reduction under § 3582(c)(1)(A)(i).[4]

Further, the government asserts that the reasons Maumau offers for seeking relief "largely have to do with his character and rehabilitative prospects" in addition to his "complaints about his sentence length," and contends that these factors cannot be considered in determining whether extraordinary and compelling reasons exist for a reduction. *Id*. at 22. But §

---

[4]    Put another way, by arguing that the Court is prohibited from considering the changes to § 924(c) in determining whether extraordinary and compelling reasons exist in this case, the government is essentially asking the Court to change the statutory language by including the italicized language that follows: "[a reduction in sentence may be granted] in any case *except for cases involving the 'stacked' § 924(c) sentences outlawed by Section 403 of the First Step Act* . . . [where] the Court . . . find[s] that extraordinary and compelling reasons warrant" relief. Nothing in the history or text of the First Step Act or § 3582 supports that implied exception. To the contrary, the text of these statutes—including the First Step Act's clarification of § 924(c) and its directive to "increase[] the use and transparency of compassionate release"—compels the opposite result.

3582(c)(1)(A) *requires* courts to consider the § 3553(a) factors in determining whether "extraordinary and compelling" reasons warrant a reduction, 18 U.S.C. § 3582(c)(1)(A), and Congress did not define or limit what can constitute an "extraordinary and compelling reason" warranting a reduction of a sentence.

### C. The § 3553(a) Factors Support Maumau's Motion for a Sentence Reduction.

The factors the Court must consider in deciding whether Maumau's sentence should be reduced, which include the factors set forth in 18 U.S.C. § 3553(a) and whether he presents a danger, *see* U.S.S.G. § 1B1.13, all weigh strongly in favor of a sentence reduction. The 45-year trial penalty Maumau received for exercising his right to trial and his rehabilitation while in prison, are among those factors. Mot. at 11-14. As discussed in Maumau's opening brief, he is deeply remorseful and has sought to live the best possible life while in prison. No legitimate goal of incarceration can be served by continuing Maumau's sentence.

The government argues Maumau is not entitled to a sentence reduction because he committed violent crimes. Opp'n at 26. However, the government was comfortable offering Maumau a plea bargain that, if accepted, would have resulted in Maumau's release from prison years ago (considering good time). And the one victim who has weighed in on whether sentencing relief is appropriate has voiced support for Maumau. Mot. at 11. Maumau does not argue that his crimes were not serious or that he did not deserve to be punished. Rather, he argues that he did not deserve the indefensibly harsh and disproportionate mandatory sentence that was imposed on him as a result of a sentencing provision that Congress has now explicitly condemned.

Maumau concedes he has incurred a number of disciplinary infractions while incarcerated (the last of which was in April 2018). He has admittedly struggled with alcohol and drug usage since he was a teenager, Mot. at 12, but he has been sober now for many years.

Maumau has not received a drug or alcohol related infraction since 2014.  Opp'n at Ex. A.  He has been disciplined for fighting.  Prison is a tough place for everyone.  Our experience representing a large number of clients like Maumau confirms that it is especially tough on those serving extraordinarily long sentences that they feel, with some justification, are unjust.  We do not seek to minimize the conduct, nor do we ask the Court to ignore it.  But it is certainly no basis for requiring Maumau to spend another 37 years in prison, and indeed it presents no concern that cannot effectively be ameliorated by post-sentence supervision.  Maumau has made positive efforts to turn his life around during his time in prison, and his accomplishments in that regard are obvious.  Mot. at 11-12.

The government's attempt to cast Maumau's involvement in the Raise Your Pen Coalition as some sort of gang activity is misguided, and the government's cherry-picked Facebook posts do not show otherwise.  Opp'n at 28-29.  The Facebook page the government points to includes the group's Mission Statement:  "Honoring the power of Raising Your Pen by making positive changes one step at a time through peace, love, unity, education & justice."  The page features posts related to immigration rights and speeches from the National Pacific Islander Violence Prevention Conference, which focuses on anti-violence in the Pacific Island community living in America.  The Raise Your Pen Coalition's Twitter page includes the same mission statement and features involvement in activities such as food and clothing drives, a career and resources fair, and a civil liberties program with the Salt Lake Peer Court.[5]  The fact that the Coalition was formed in response to the tragic death of Siale Angilau does not detract from the group's commendable efforts.

---

[5]        https://twitter.com/raiseyourpen.

The government argues that the court may not consider sentencing disparities between Maumau and his co-defendants. *Id*. at 38. But, as mentioned above, the statute expressly directs the court to consider all applicable factors set forth in section 3553(a), and those factors include such sentence disparities. 18 U.S.C. § 3582(c)(1)(A). Here, as in *Cantu-Rivera*, the combination of factors in Maumau's case, including his rehabilitation and the sentencing disparities between him and others convicted of similar conduct, weigh in favor of a sentence reduction under § 3582(c)(1)(A). *See Cantu-Rivera*, 2019 WL 2578272, at *2 (in evaluating a claim brought under 18 U.S.C. § 3582(c)(1)(A)(i), courts must consider the combination of factors warranting relief, which includes, among other things, both rehabilitation and the "fundamental change to sentencing policy carried out in the First Step Act[]").

The government's ominous-sounding "systemic consequences" of granting our motion are especially telling. What if a defendant files such a motion shortly after sentencing, the government wonders, and a court reduces the sentence "based on its disagreement with the length of a mandatory sentence"? Opp'n at 34. Though that scenario was presented as something horrible, it would actually amount to judging. The government seems to think that just because a "sentence was both required and constitutional," *id*. at 30, it is also just. The First Step Act introduced a truly modest first step toward allowing judges to act as a brake on the kind of prosecutorial discretion a belief like that produces. Its modesty inheres in the fact that a reduction can be ordered and affirmed only if the circumstances are "extraordinary and compelling." This narrow slice of authority that has been vested in judges is thus not likely to become the "catch-all resentencing statute" the government posits.

## CONCLUSION

For all the foregoing reasons, Maumau's motion to reduce his sentence pursuant to 18

U.S.C. § 3582(c)(1)(A)(i) should be granted.

Dated:  New York, New York
        February 3, 2020

Respectfully submitted,

COHNE KINGHORN, P.C.

By: /s/ Patrick E. Johnson

Patrick E. Johnson (pjohnson@ck.law)


DEBEVOISE & PLIMPTON LLP

By: /s/ John Gleeson

John Gleeson (jgleeson@debevoise.com)
Farhana Choudhury (fchoudhury@debevoise.com)

(*admitted pro hac vice*)


*Attorneys for Kepa Maumau*

11