IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>vs.<br><br>KEPA MAUMAU,<br><br>                        Defendant. | ORDER AND MEMORANDUM DECISION SETTING HEARING ON MOTION TO REDUCE SENTENCE<br><br>Case No. 2:08-cr-00758-TC-11 |

On January 5, 2012, Defendant Kepa Maumau was sentenced to 57 years in prison. (ECF No. 1269.) The sentence was later reduced to 55 years following an appeal. (ECF No. 1538.) Now, after having served approximately ten years in prison,[1] Mr. Maumau has filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 1735.)

To obtain a sentence modification, Mr. Maumau must first show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). If he successfully makes this showing, the court must then weigh the factors typically considered at the time of sentencing—the nature of the crime, the defendant's characteristics and history, the danger to the public, the sentencing range available, and other relevant issues—to determine what type of modification is appropriate. 18 U.S.C. § 3553(a).[2]

---

[1] Mr. Maumau was in custody throughout the proceeding. (ECF No. 142.)
[2] This provision is often referred to as a the "compassionate release" statute. See United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505 at *4 (M.D.N.C. June 28, 2019). In this order, the court uses the phrase "compassionate release" and "sentence modification" interchangeably, which is consistent with how other courts have used the terms.

Mr. Maumau's motion raises three questions. First, does the court have the discretion to provide relief? For the reasons stated below, the court concludes that it does. Second, should the court exercise that discretion to modify Mr. Maumau's sentence? Again, the court concludes below that it should. Finally, if Mr. Maumau is a good candidate for relief, by how much should his sentence be reduced? To resolve this question, the court orders the United States and Mr. Maumau to appear at a hearing on April 7th, at which time the court will weigh the § 3553(a) factors and make its determination.

I. **Whether the Court has Discretion to Provide Relief**

A term of imprisonment can be reduced only if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress has tasked the United States Sentencing Commission with defining the phrase "extraordinary and compelling" and has also required that any judicial order modifying a sentence be "consistent with applicable policy statements issued by the Sentencing Commission." See 28 U.S.C. § 994(t); 18 U.S.C. § 3582(c)(1)(A).

The parties agree that under the existing Sentencing Commission policy, Mr. Maumau is not entitled to a compassionate release. But this policy has not been updated to reflect the passage of the First Step Act of 2018.[3] See Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Mr. Maumau contends that the First Step Act empowers the court to provide relief notwithstanding that policy.

---

[3] The Sentencing Commission's policies are unlikely to be updated any time soon because there are currently an insufficient number of appointed commissioners. See United States v. Brown, No. 4:05-CR-00227-1, 2019 WL 4942051 at *2 n.1 (S.D. Iowa Oct. 8, 2019) ("As district courts have noted often this year, the Sentencing Commission has not amended the Guidelines following the First Step Act and cannot do so until it again has four voting commissioners."); see also About the Commissioners, U.S. SENTENCING COMM'N, https://www.ussc.gov/commissioners (last visited Feb. 12, 2020) (stating that only two commissioners are presently in place).

"Before passage of the First Step Act of 2018, district courts could grant compassionate release sentence reductions only upon a motion by the [Bureau of Prisons] Director." United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505 at *4 (M.D.N.C. June 28, 2019). After the First Step Act, a motion for modification may be brought directly by the prisoner.[4] 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's current policy still states that a court can order a compassionate release only "[u]pon motion of the Director of the Bureau of Prisons." See U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2004). It then outlines four situations in which a compassionate release is appropriate. Id. at n.1(A)-(D). The first category covers prisoners with terminal medical conditions, the second addresses prisoners of advanced age, and the third applies when a prisoner becomes the sole available caregiver for a child, due to the death or incapacitation of the other parent. Id. at n.1(A)-(C). Mr. Maumau does not seek relief under any of these subdivisions.

The final category is a catch-all provision that permits relief when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. at n.1(D). It is under this catch-all provision that Mr. Maumau seeks relief.

The Director has never recommended that Mr. Maumau receive a sentence modification. But Mr. Maumau argues that because the First Step Act now allows either the Director or the individual defendant to file a motion for compassionate release, the portion of the catch-all provision that limits relief to grounds identified by the Director is inconsistent with the law.

---

[4] Such a motion may be brought only after the prisoner has exhausted certain avenues of administrative relief. The United States concedes that Mr. Maumau satisfied these requirements before filing his motion. (See Pl.'s Opp'n at 9-10 (ECF No. 1740).)

At present, no Court of Appeal has addressed this issue. But a majority of district courts to consider the question have embraced Mr. Maumau's position:

> There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions for compassionate release filed by the BoP Director and makes no mention of motions filed by defendants. . . .
>
> While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i). An interpretation of the old policy statement as binding on the new compassionate release procedure is likely inconsistent with the Commission's statutory role. . . . It is also inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BoP finds they are not appropriate. . . . Thus, courts may, on motions by defendants, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement.

Beck, 2019 WL 2716505 at *5-6; see also United States v. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923 at *5 (S.D. Tex. June 17, 2019) ("[T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements at any time . . . —is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief."). Accord United States v. Cantu-Rivera, No. H-89-204, 2019 WL 2578272 at *2 n.1 (S.D. Tex. June 24, 2019); United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086 at *3 (D. Me. July 11, 2019); United States v. Rivernider, No. 3:10-cr-222(RNC), 2019 WL 3816671 at *2 (D. Conn. Aug. 14, 2019); United States v. Bucci, No. 04-10194-WGY, 2019 WL 5075964 at *1 (D. Mass. Sept. 16, 2019); United States v. Brown, No. 4:05-CR-00227-1, 2019 WL 4942051 at *4 (S.D. Iowa Oct. 8, 2019); United States v. Urkevich, No. 8:03CR37, 2019 WL 6037391 at *3 (D. Neb. Nov. 14, 2019); United States v.

4

Dusenbery, No. 5:91-cr-291, 2019 WL 6111418 at *3 n.3 (N.D. Ohio Nov. 18, 2019); United States v. Valdez, No. 3:98-cr-0133-01-HRH, 2019 WL 7373023 at *2-3 (D. Alaska Dec. 31, 2019); United States v. Schmitt, No. CR12-4076-LTS, 2020 WL 96904 at *3 (N.D. Iowa Jan. 8, 2020).

The United States urges this court to disregard these cases, and to instead follow the minority of courts that have held that the Sentencing Commission's policy remains binding.

Of the cases cited by the United States, several are irrelevant because they address compassionate release requests that were based on subdivisions A through C of the Sentencing Commission's policy—for medical condition, age, or caregiver status—but did not discuss the catch-all provision in subdivision D, which is at issue here. See United States v. Willis, 382 F. Supp. 3d 1185 (D.N.M. 2019); United States v. McGraw, No. 2:02-cr-00018, 2019 WL 2059488 (S.D. Ind. May 9, 2019); United States v. York, No. 3:11-CR-76, 2019 WL 3241166 (E.D. Tenn. July 18, 2019); United States v. Washington, No. 5:13-020-DCR, 2019 WL 6220984 (E.D. Ky. Nov. 21, 2019). But the policy's first three categories are substantively different from the fourth category. Nothing in the First Step Act necessarily requires the Sentencing Commission to reevaluate those first three subdivisions. It is likely that a hypothetical post-First Step Act policy promulgated by the Sentencing Commission would be substantively the same for those categories. The fourth category, by contrast, allocates significant discretion to the Director of the Bureau of Prisons, which was consistent with pre-First Step Act law but is no longer appropriate, given Congress's decision to remove the Director's control over compassionate release motions. In short, it is dicta for those courts to hold that the entire policy remains valid because the continued validity of subdivision D was not before any of those courts.

The United States also cites three other cases that do specifically address the catch-all provision. One of these, United States v. Shields, No. 12-cr-00410-BLF-1, 2019 WL 2359231 (N.D. Cal. June 4, 2019), is of little help. The Shields court concluded that the catch-all provision was still binding because "[the defendant] has not cited, and the Court has not discovered, any authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments." Id. at *4. It is unsurprising that the Shields court found no authority on this issue, as it was the first court (by about eleven days) to directly consider the continued legitimacy of the catch-all provision. It is unknown how the Shields court would rule if presented with the issue today, now that it would have the benefit of the eleven opinions from other district courts, cited above, which all hold that the catch-all provision must be disregarded in light of the First Step Act.

The other two cases cited by the United States are also unpersuasive. First, in United States v. Willingham, No. CR113-010, 2019 WL 6733028 (S.D. Ga. Dec. 10, 2019), the court quoted other cases that involved the continued validity of the medical release portion of the policy and then summarily extrapolated that the catch-all provision must also still be valid. Id. at *2 (citing United States v. Johns, No. CR 91-392-TUC-CKJ, 2019 WL 2646663 (D. Ariz. June 28, 2019), United States v. Gross, No. 2:04-CR-32-RMP, 2019 WL 2437463 (E.D. Wash. June 11, 2019), and United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311 (M.D. Fla. June 7, 2019)). But as just discussed, under the First Step Act, there are legitimate reasons to treat the portion of the policy dealing with medical releases differently from catch-all subdivision.

Meanwhile, in United States v. Lynn, No. 89-0072-WS, 2019 WL 3805349 (S.D. Ala. Oct. 8, 2019), the court held that so long as the statute continued to instruct the Sentencing Commission to define what counted as an extraordinary and compelling reason to provide relief, the Sentencing Commission's most recent policy continued to govern. The court held that "[i]f the policy statement needs tweaking . . . , that tweaking must be accomplished by the Commission, not by the courts." Id. at *4.

This court respectfully disagrees. As discussed at length in Brown, which was directly responding to the Lynn decision, one of the express purposes of the First Step Act was to "increas[e] the use and transparency of compassionate release." Brown, 2019 WL 4942051 at *3. But continuing to give the Bureau of Prisons Director a veto over such requests would defeat this goal. Instead, "the only way [that] direct motions to district courts would increase the use of compassionate release is to allow district judges to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" Id.; see also Beck, 2019 WL 2716505 at *6 ("An interpretation of the old policy statement as binding on the new compassionate release procedure is . . . inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BoP finds they are not appropriate.").

Having reviewed all of the above cases, this court joins the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement. Under the First Step Act, it is for the court, not the

Director of the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence.[5]

## II. Whether Mr. Maumau is Entitled to Relief

Even though the court has the discretion to provide relief, Mr. Maumau must still demonstrate that there is an "extraordinary and compelling reason" to reduce his sentence. Mr. Maumau argues his sentence should be reduced primarily because of his age at the time of conviction, the length of sentence imposed, and the fact that Congress has subsequently reduced the sentencing guidelines that apply to the same crimes.

Mr. Maumau was 20 years old when he was arrested and was 24 years old when he was sentenced. (Def.'s Mot. at 1 (ECF No. 1735).) He was sentenced to seven years in prison for one violation of 18 U.S.C. § 924(c),[6] twenty-five years for the second violation of § 924(c), and twenty-five years for the third violation of § 924(c), all to be served consecutively, as required by the mandatory minimum sentences in place in 2012.[7] (Id. at 3.)

This court has repeatedly expressed its concern regarding the length of that sentence. At the sentencing hearing, Mr. Maumau's attorney made a lengthy statement regarding the

---

[5] The court briefly notes that, in reaching this conclusion, its reasoning is slightly different from some of the other district courts cited above. A few of those cases frame the First Step Act as shifting discretion from the Bureau of Prisons Director to the district courts. See, e.g., Fox, 2019 WL 3046086 at *3 ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); Brown, 2019 WL 4942051 at *4 (same). But in this court's view, the district courts have always had the discretion to determine what counts as compelling and extraordinary. The courts have never been a rubber stamp for compassionate release decisions made by the Bureau of Prisons. See, e.g., United States v. DiMasi, 215 F. Supp. 3d 179 (D. Mass. 2016) (ordering the Bureau of Prisons Director to file more evidence to justify its conclusion that a prisoner should obtain relief). The key change made by the First Step Act is not a redistribution of discretion, but the removal of the Director's role as a gatekeeper. Before the First Step Act, the Director's role limited the number of cases the courts saw and, by extension, limited the number of instances in which the courts exercised their discretion to determine what counted as an extraordinary and compelling reason to modify a sentence. Because prisoners may now file motions directly, courts will address this issue more frequently. But this is not a new grant of discretion; it is merely an increased opportunity to exercise that discretion.

[6] Section 924(c) imposes a sentencing enhancement for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."

[7] As noted above, his seven-year sentence was subsequently reduced to five years, in light of the Supreme Court's decision in Alleyne v. United States, 570 U.S. 99 (2013). (ECF No. 1538.)

unjustness of the mandatory sentence, to which the court responded, "I think what's been said is accurate." (Sentencing Transcript 6:10-10:8 (ECF No. 1391).)[8] Later, in early 2019, the court submitted a letter to U.S. Attorney John Huber, writing, "At the time of sentencing, I noted my distaste with the mandatory sentence I was required to impose on Mr. Maumau. Now I have another opportunity to express my dissent. . . . I urge you to do everything in your discretionary prosecutorial power to correct this injustice." (Ex. A to Def.'s Mot. (ECF No. 1735-1).)

As part of the First Step Act, Congress eliminated the consecutive stacking previously required for violations of § 924(c):

> [Before the First Step Act], one § 924(c) count carried a five-year minimum sentence that must be served consecutively. An additional § 924(c) count required the district court to tack on another twenty-five years in prison, even though that gun possession occurred during the same course of conduct as the original count. . . .
>
> The [First Step Act] clarified that § 924(c) counts can only be stacked if the second offense occurs after a final conviction on the first offense. § 403(a), 132 Stat. at 5221-22. In other words, if sentenced today, a court would add only five years to [a defendant's] sentence . . . , not thirty.

Brown, 2019 WL 4942051 at *5.

When considered together, the court is inclined to find that Mr. Maumau's age, the length of sentence imposed, and the fact that he would not receive the same sentence if the crime occurred today all represent extraordinary and compelling grounds to reduce his sentence.

The United States points out in its opposition that Mr. Maumau's request is unlike the vast majority of compassionate release requests because he is not suffering from any medical- or

---

[8] The fact that the court had this concern at the time of sentencing has no bearing on whether it may now be grounds for a compassionate release. As the Sentencing Commission has noted, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.2.

9

age-related physical limitations. But the fact that such cases are uncommon does not mean that Mr. Maumau's request must be denied.

First, the lack of such cases is, at least arguably, part of what spurred Congress to pass the First Step Act. The Bureau of Prisons Director was first placed in charge of bringing compassionate release motions as part of the Sentencing Reform Act of 1984. See Pub. L. No. 98-473, 98 Stat. 1837 (Oct. 12, 1984). In the Senate Report that accompanied that Act—which both Mr. Maumau and the United States cite in their briefing—Congress indicated that sentence modifications would be appropriate in "cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55-56 (1984). Despite this intent, a 2013 Inspector General's report by the Department of Justice found that "although the BOP's regulations and Program Statement permit non-medical circumstances to be considered as a basis for compassionate release, the BOP routinely rejects such requests and did not approve a single nonmedical request during the 6-year period of our review." U.S. DEP'T OF JUSTICE, The Federal Bureau of Prisons' Compassionate Release Program, at ii, (Apr. 2013).[9]

In other words, Congress indicated thirty-five years ago that it would be appropriate to provide compassionate releases when sentences are "unusually long" but the Bureau of Prisons consistently declined to seek relief in those situations. Congress responded by eliminating the Bureau of Prisons' gatekeeping function over compassionate releases. Accordingly, the fact that

---

[9] Available at https://oig.justice.gov/reports/2013/e1306.pdf.

the phrase "extraordinary and compelling reason" has not historically been interpreted to include exceedingly long sentences is an unpersuasive reason to exclude such an interpretation today.

In any event, the United States is incorrect in suggesting that courts have never provided compassionate releases due to lengthy sentences. In Brown, for example, the court strongly implied that changes to how § 924(c) sentences are calculated could be an extraordinary and compelling reason to modify a sentence. Brown, 2019 WL 4942051 at *5. The court denied relief in that case only because it concluded that the defendant ought to serve more of his original sentence before the court would consider making that finding. Id. at *6 ("[B]ecause Defendant would still be in prison under modern law, any sentencing disparity created by § 924(c) stacking does not, at least yet, provide an 'extraordinary and compelling reason' for compassionate release.") (emphasis added).

The Cantu-Rivera court also took the length of the sentence into account when it provided relief:

> Mr. Cantu-Rivera also meets the requirements of U.S.S.G. § 1B1.13, comment. (n.1(D)), which permits a reduction when "there exists in defendant's case an extraordinary and compelling reason other than, or in combination with," the remainder of the Guideline definition. Such a combination of factors is present in this case. First, the Court notes the age-related factors previously discussed. The Court also recognizes the extraordinary degree of rehabilitation Mr. Cantu-Rivera has accomplished during the 30 years he has been incarcerated. . . . Finally, the Court recognizes as a factor in this combination the fundamental change to sentencing policy carried out in the First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendant's prior convictions. . . . The combination of all of these factors establishes the extraordinary and compelling reasons justifying the reduction in sentence in this case.

Cantu-Rivera, 2019 WL 2578272 at *2.

Finally, and perhaps most importantly here, at least one district court has modified a sentence based solely on the First Step Act's changes to § 924(c) sentencing:

> The Government acknowledges that Urkevich's three firearms counts would have carried mandatory terms of 60 months each (180 months), and not 300 months for Counts III and V (660 months total) if he had been sentenced after the effective date of the First Step Act. Accordingly, the sentence he is serving (848 months) is forty years longer than the sentence he likely would have received (368 months) if he were sentenced under the law (18 U.S.C. § 924(c)(1)(C)) as it now exists.
>
> . . .
>
> A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.

Urkevich, 2019 WL 6037391 at *2-4.

Like the Urkevich court, this court concludes that the changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here.

The United States objects to this conclusion because, it notes, Congress could have made its changes to § 924(c) retroactive but it chose not to do so. See Brown, 2019 WL 4942051 at *5. While this is a relevant consideration, it ultimately has little bearing on the court's conclusion. It is not unreasonable for Congress to conclude that not <u>all</u> defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve <u>some</u> defendants of those sentences on a case-by-case basis. As just noted, that is precisely the approach taken by the Urkevich court.

Based on the above, the court concludes that a combination of factors—Mr. Maumau's young age at the time of the sentence, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment—establish an extraordinary and compelling reason to reduce Mr. Maumau's sentence.

### III. The Type of Modification is Warranted Here

Having found that Mr. Maumau's sentence should be reduced, the court must next "consider[] the factors set forth in section 3553(a) to the extent they are applicable" to determine what type of new sentence would be appropriate.

Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court notes that, notwithstanding the colloquial references to Mr. Maumau's motion as one for "compassionate release," the court need not actually modify the sentence to effectuate Mr. Maumau's immediate release from prison. Rather, a downward adjustment may be made

even if it results in Mr. Maumau's continued incarceration. See Urkevich, 2019 WL 6037391 at *4 ("If this Court reduces Urkevich's sentences on Counts III and V to 60 months each, consecutive, he will not be eligible for immediate release. His sentence would total 368 months, and he would have served somewhat more than half that sentence. Nonetheless, the Court does not consider the Motion premature. . . . A reduction in the sentence at this juncture will help Urkevich and the Bureau of Prisons plan for his ultimate release[.]").

Regarding what type of sentence to impose, Mr. Maumau "urge[s] the Court to . . . hav[e] him brought to the district, where he can be interviewed by Probation and perhaps have an opportunity to address the Court." (Def.'s Reply at 1 (ECF No. 1744).) The court agrees that this is the best way for the court to determine an appropriate sentence modification.

Accordingly, the court sets this matter (ECF No. 1735) for a hearing at 2:00 p.m. on April 7th. At that time, Mr. Maumau and the United States will be permitted to present their arguments regarding what would be an appropriate sentence for Mr. Maumau in light of the above factors. The court further orders Mr. Maumau, in advance of the resentencing hearing, to meet with the Probation Office, and for the Probation Office to prepare a new Presentence Report that addresses Mr. Maumau's character, his danger to the public, his likelihood of rehabilitation or recidivism, the type of sentence he likely would have received had he been charged and convicted after the First Step Act had been passed, and any other relevant considerations.

The U.S. Attorney's Office is ordered to immediately arrange for Mr. Maumau's transportation to Utah so that he may meet with the Probation Office and be present at the hearing.

SO ORDERED this 18th day of February, 2020.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge