Patrick E. Johnson (10771)
pjohnson@ck.law
COHNE KINGHORN, P.C.
111 E. Broadway, 11th Floor
Salt Lake City, Utah 84111
(801) 363-4300

John Gleeson (1820992 New York)
Farhana Choudhury (5478797 New York)
jgleeson@debevoise.com
fchoudhury@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*(admitted pro hac vice)*

*Attorneys for Defendant Kepa Maumau*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**v.**<br><br>**KEPA MAUMAU,**<br>  **Defendant.** | **RESENTENCING MEMORANDUM**<br><br>Case No.  2:08-CR-00758-TC-11<br><br>Judge Tena Campbell |

Defendant Kepa Maumau, through counsel, respectfully submits this memorandum in advance of the resentencing scheduled for May 4, 2020.  In 2008, at age 20, Maumau engaged in three robberies.  He acknowledges that they were serious crimes. He committed them because of his youth and susceptibility to peer pressure, but nothing in this submission or in the statements that will be made on May 4 is intended to minimize the severity of the offense conduct.

For the reasons set forth below and others reasons that may be presented orally on May 4, we submit that the prison term Maumau has already served is sufficient to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).  We therefore ask that his sentence be reduced to time served.

### A.  The Reasons a Sentence of Time Served is Appropriate

Since an examination of the factors set forth in 18 U.S.C. § 3553(a) is integral to a decision on whether to reduce a sentence under § 3582(c)(1)(A) – a decision this Court has already made – the briefing in support of our motion has already addressed the factors that will also influence the extent of the reduction.  In broad strokes, Maumau's case is all too familiar.  A teenager from a tight-knit family and community fell into substance abuse and the wrong crowd. What might have become a star turn as a college athlete and beyond was derailed by terrible decisions and now more than a decade in prison.  Thankfully, no one was physically injured by the offenses of conviction, and indeed the only victim to have weighed in on the motion to reduce the sentence supports it.

We will be prepared to address these and other factors on May 4.  For the purposes of this submission, we focus on the following reasons why a reduction to a sentence of time served is appropriate.

1. *Maumau Has Already Been Punished Appropriately*

When he appears before the Court on May 4, Maumau will have served almost 125 months in prison on this case,[1] the equivalent, considering good time, of a sentence of more than 12 years.  A 12-year sentence would be *more than two times longer* than the average sentence for robbery in this district over the five years that straddled 2011, the year this Court sentenced Maumau.[2]

2. *The Man Maumau Has Become*

One accomplishment of the 2018 amendment to the compassionate release statute is that it allows a "second look" at unusually long sentences.  In determining the appropriate reduction in Maumau's 55-year sentence, the Court has the benefit of seeing the man he has become since he was before you last.  He is now 32 years old, and he has tried hard to right himself.

We commend to the Court paragraphs 8 through 10 of the Probation Department's supplemental report dated March 30, 2020 ("PSR II"), ECF No. 1749.  Maumau has participated in over 400 hours of educational and wellness courses—including business and management, communication, personal finance, marketing, software, brain fitness, lifelong health, employment, and parenting classes.  He is currently assigned to the Education work detail and has earned positive work evaluations with respect to his "relationship with supervisor and co-workers, attitude, punctuality, and willingness to accept and complete assignments."  Maumau is also participating in the Challenge Program, a cognitive behavioral treatment program focused on treating substance abuse and behavioral therapy.  He has been sober for many years, and is now free from the vices of alcohol and drugs with which he has battled since he was a teenager.

---

[1]     Maumau has been in custody since December 10, 2009.  *See* Presentence Report ¶ 99.

[2]     The relevant page of data from the Sentencing Commission's Interactive Sourcebook is attached as "**Ex. A**".

Maumau has also become involved with a non-profit organization called the Raise Your Pen Coalition.  Though the government again mischaracterizes Maumau's involvement with this organization as a "veneration of another's violence," Gov't Memo at 5, ECF No. 1750, it continues to ignore  the group's Mission Statement, which says the opposite:  "Honoring the power of Raising Your Pen by making positive changes one step at a time through peace, love, unity, education & justice."  *See* Def's Reply at 9, ECF No. 1744.  Indeed, Maumau has recently received an offer of employment in the Publications Program at the Utah Reintegration Program (endorsed and supported by the Salt Lake Community College) as a result of Maumau "maintaining positive connections to the Salt Lake community through 'Raise Your Pen', a grassroots coalition dedicated to saving youth from incarceration."  Letter from Dr. Anthony J. Nocella II (February 3, 2020) (attached hereto as "**Ex. B**.").  Dr. Nocella's letter highlights that the coalition "has recently joined the community-based projects under the umbrella of the Utah Reintegration Project[,]" and explains that the community college has dedicated a campus internship position to Raise Your Pen "to support civic engagement and encourage marginalized communities to develop leadership capacity."  Dr. Nocella also commends Maumau for his extensive scholarship while in prison.

None of the foregoing is undermined by Maumau's disciplinary history in prison.  Of course he has had his share of infractions.  As we mentioned in our reply brief, prison is a tough place for everyone, even good inmates.  It is especially tough on very young men who find themselves facing a lifetime of imprisonment not because anyone thought their conduct warranted it – the U.S. Attorney offered Maumau a ten-year prison term – but because they were subjected to an extravagant trial penalty inflicted in a racially discriminatory fashion.  In any

event, Maumau has not had any infractions in two years, and he has not received a drug or alcohol-related infraction since 2014.

Maumau will be an asset to the community, as further demonstrated by the additional offers of employment that have already been extended to him.  Maumau has secured another job offer from Propak Corporation in Salt Lake City, a large local employer specializing in construction supply-chain and transport.  Letter from Dr. Lea Lani Kinikini (August 22, 2019) (attached hereto as "**Ex. C**").  Masa Tukuafu, who knew Maumau when he was attending college and is the owner of a restaurant and catering business in Mesa, Arizona, is also prepared to hire Maumau.  Letter from Masa Tukuafu (September 5, 2019) (attached hereto as "**Ex. D**").  Tukuafu believes that Maumau was "a great kid and deserves a second chance."  *Id*.  The Salt Lake Community College has also committed to providing Maumau with student support services, such as an assigned advisor from the School of Applied Technology for individual career guidance and participation in a recidivist risk reduction mentoring program ("Brother-2-Brother") supporting men of color transitioning from corrections institutions.  Letter from Dr. Kinikini.  Thus, Maumau has three job offers and the opportunity to further his educational and vocational skills upon his release.

Finally, Maumau's transition to life outside prison will be assisted by his large and extremely tight-knit family.  Unfortunately, he recently lost his father, but he remains close to his mother and sisters, who reside in Salt Lake City, and to his extended family as well.  Backed by this network of support, Maumau is well-equipped to re-enter society successfully.

In short, if this Court is prepared to give Maumau the rest of his life back, he is prepared to make that decision count, for him, his family, his community, and the Court itself.  He

understands already the lengths the Court has gone to bring a measure of justice to his case, and he is determined not to let the Court down.

    3.   *Advances in Neuroscience*

We know so much more today about the cognitive development of young offenders than we did when this Court imposed the mandatory sentence on Maumau in 2011. We commend to the Court the publication of the MacArthur Foundation Research Network on Law and Neuroscience entitled "*How Should Justice Policy Treat Young Offenders*?"[3] It underscores two important facts in this case. One is that delinquency in adolescents (and that term included Maumau at the time the offenses were committed) "is usually not an indication of an indelible personality trait." *Id.* at 2. The other is that there is every reason to believe, especially in light of how he has bettered himself in the intervening decade, Maumau has aged out of violent crime. *Id.*[4] In short, advancements in neuroscience and social science tell us that Maumau at 32, as opposed to Maumau at 20, has a dramatically reduced disposition toward criminal behavior. In addition to the authorities cited above, in a study funded by the Department of Justice, researchers opined that, "unlike logical-reasoning abilities, which appear to be more or less fully developed by age 15[,] psychological capabilities that improve decision making and regulate risk taking—such as impulse control, emotion regulation, delay of gratification, and resistance to peer influence—continue to mature well into young adulthood."[5] The study found that "adolescents and young adults simply do not have the physiological capacity of adults over age

---

[3]     MacArthur Foundation Research Network on Law and Neuroscience, *How Should Justice Policy Treat Young Offenders?* Law and Neuro (Feb. 2017), http://www.lawneuro.org/adol_dev_brief.pdf.

[4]     *See also* Rachel Elise Barkow, *Prisoners of Politics* 44-45 (2019) ("Most juveniles discontinue their criminal activity after brief experimentation with it.").

[5]     James C. Howell et al., Bulletin 5: Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know 17 (2013), https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf.

25 to exercise judgment or control impulses" and concluded that policymakers should implement a "categorical rule of youthfulness as a mitigating factor in sentencing" as opposed to "individualized discretion." *Id*. at 18, 29.

One of the congressional directives to the Sentencing Commission is to create "sentencing policies and practices that," among other things, "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process." 18 U.S.C. § 991(b)(1)(C). Perhaps when the Commission regains a quorum, its Guidelines Manual will reflect the advancements in knowledge described above about youthful offenders, especially given the current concern about over-incarceration. But this much is clear: the Court can certainly consider these advancements in knowledge in determining the appropriate reduction in Maumau's sentence, and they weigh heavily in favor of a reduction to time served.

4. *COVID-19*

In light of the ongoing COVID-19 epidemic, there is added exigency to securing Maumau's immediate release. As Judge Anita Brody recently observed in granting a compassionate release motion, "[p]risons are tinderboxes for infectious disease," and "every day, outbreaks are appearing in new facilities." *United States v. Rodriguez*, Case No. 2-03-cr-00271-AB-1 (E.D. Pa., Apr. 1, 2020). Doubts about appropriate sentence length should always be resolved in favor of the shorter sentence, but that is especially true today. Releasing Maumau from custody will reduce the risk of infection for him, for others incarcerated with him, and for the staff at that facility. Counsel (with the advice and consent of the Probation Department of course) will take steps to ensure that releasing him will not increase the risk of infection for his mother or other family members.

### B.  The Government's Recommendation Should Be Disregarded

More than anything else, the government's submission reflects a phenomenon we have encountered over and over again in representing clients like Maumau around the country: the government is not happy about the fact that Congress has allowed Courts to act as a check on prosecutorial discretion.[6]  In an imprudent exercise of that discretion ten years ago, the government forced this Court to impose a draconian sentence.  Every single day of the 55-year term that the U.S. Attorney has shamelessly sought to perpetuate in this case was forced on the Court because the government failed to distinguish between what it had the power to do and what was right to do. That happened far too many times, and the corrective mechanism that § 3582(c)(1)(A) was supposed to provide failed because of the BOP.  The 2018 amendment to that statute invigorated a judicial check on prosecutorial excesses that Congress enacted in 1984.

To this day, the government simply misapprehends the role of the Court.  That role is not limited to calculating what sentence the government could force on the Court today through yet another imprudent exercise of discretion (which, by the way, the government calculates incorrectly[7]).  Rather, it is to consider the § 3553(a) factors and impose a *just* sentence. *See Wright v. United States*, No. 4:95-CR-39, 2019 WL 6039954, at *4 (E.D. Va. Nov. 14, 2019) ("The First Step Act allows federal courts to in fact impose new reduced sentences, not simply modify or reduce the current 'term of imprisonment' already decided.").  In fact, this approach to sentence reductions has been applied in the context of reductions for stacked § 924(c) counts

---

[6]          *See, e.g.*, *United States v. Haynes*, No. 93-CR-1043-RJD, Order at 6-8, Dkt. 114 (E.D.N.Y. Apr. 22, 2020); *United States v. Marks*, No. 03-CR-6033L, __ F. Supp. 3d. __, 2020 WL 1908911, at *2 (W.D.N.Y. Apr. 20, 2020).

[7]          The government's contention that Maumau's mandatory minimum sentence today would be 21 years is wrong.  After *United States v. Alleyne*, 570 U.S. 99 (2013), Maumau's seven-year sentence for his first § 924(c) conviction was reduced to five years because a jury had not found that the firearm at issue had been brandished. There was no such finding on the other § 924(c) counts either, and the government has no business simply assuming it could both comply with the Sixth Amendment right to trial by jury and obtain a 21-year mandatory sentence. Rather, as set forth in the PSR, even if the government could impose its will on the Court yet again, the total mandatory sentence for the § 924(c) counts would be only 15 years.  PSR II at ¶ 4.

based on § 3582(c).  *See U.S.A. v. Defendant(s)*, No. 2:99-CR-00257-CAS-3, 2020 WL 1864906, at *7-8 (C.D. Cal. Apr. 13, 2020) (granting compassionate release and reducing defendant's sentence to time served, which was almost eight years shorter than the sentence defendant would receive if sentenced for the same counts today).  Moreover, because the Court is resentencing Maumau, the Court may consider any and all relevant post-conviction conduct in forming a sentence that is sufficient, but not greater than necessary, to achieve the purposes of incarceration.  *Cf. Pepper v. United States*, 562 U.S. 476, 490 (2011) (holding that a district court may consider "evidence of a defendant's rehabilitation since his prior sentencing" to support a downward variance from the guidelines after that initial sentence has been set aside on appeal).

The government contends that Maumau must serve "at least" 25 years because only a sentence of that length would be "sufficient but no more than necessary to reflect the seriousness of the offenses, to protect the community, to deter future criminal conduct, and to promote respect for the law."  Gov't Memo at 8.  In determining the weight to give that contention, we ask the Court consider, first, the government's opposition to this motion.  If the government truly believed 25 years was sufficient to serve all of the goals of sentencing, why did it try to cling to a sentence more than twice that length as though it were the only conviction it ever obtained?  If it had any real desire to see justice done in this case, why did it defend that sentence?

But of course the government has never believed that anything close to 25 years is necessary to serve any of the goals stated in its sentencing submission.  If it had, it would never have offered Maumau a plea bargain pursuant to which he would have served only ten years.  If it had, the average sentence for robbery in this district would not be less than half of what Maumau has already served.  The extravagant sentence imposed on Maumau had literally nothing to with the severity of his offenses or a need to protect the community from him for

decades or promote respect for the law.  It had everything to do with the fact that plea bargaining in this district and elsewhere occurs against a very severe backdrop, and Maumau insisted on a trial.  The government was in a position to punish that decision, and it did so.  Promoting respect for its plea offers is not the same thing as promoting respect for the law.

Finally, the arbitrary number the government has now alighted upon as the only just sentence in this case – at least 301 months – is usefully compared to one other data point: the average sentence for murder in the Tenth Circuit for the last ten years was 261 months.[8]

Doing justice in a case like this is not easy, but we have tried our best to base our request on the facts of the case, and on the factors the Court is both permitted and obligated to consider. The government's reflexive reliance on mandatory minimums to justify the latest of its contradictory positions on the appropriate sentence in this case is no help at all, and should be disregarded.

## **CONCLUSION**

For all the foregoing reasons, we respectfully request that the Court reduce Maumau's sentence to time served.

Dated:  New York, New York
        April 27, 2020

        Respectfully submitted,

        COHNE KINGHORN, P.C.

By: /s/ Patrick E. Johnson

        Patrick E. Johnson (pjohnson@ck.law)

---

[8]    The relevant page of data from the Sentencing Commission's Interactive Sourcebook is attached as "**Ex. E**".

DEBEVOISE & PLIMPTON LLP

By:  /s/ John Gleeson

John Gleeson (jgleeson@debevoise.com)
Farhana Choudhury (fchoudhury@debevoise.com)

(*admitted pro hac vice*)


*Attorneys for Kepa Maumau*