IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br><br>Plaintiff,<br><br>vs.<br><br><br>KEPA MAUMAU,<br><br><br>Defendant. | ORDER GRANTING<br>MOTION TO REDUCE SENTENCE<br><br><br><br>Case No. 2:08-cr-00758-TC-11 |

On October 15, 2019, Defendant Kepa Maumau filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 1735.) To obtain relief, Mr. Maumau must first show that there are extraordinary and compelling reasons to modify his sentence. If he successfully makes that showing, the court must then evaluate the factors identified in 18 U.S.C. § 3553(a) to determine by how much the sentence should be reduced.

On February 18, 2020, the court held that Mr. Maumau had satisfied the first prong of the test. See United States v. Maumau, Case No. 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020). The court ordered that a new Presentence Report be prepared and that the parties file resentencing memoranda addressing the § 3553(a) factors. An initial sentence modification hearing was held on May 4, 2020. Afterward, the court ordered supplemental briefing regarding whether it was required to impose the sentence that Mr. Maumau would receive if he were

charged and convicted today.  The sentence modification hearing reconvened on May 11, 2020,

where the court considered additional oral argument from counsel.[1]

Mr. Maumau requests that his sentence be reduced to time served, which equals

approximately ten-and-a-half years.  The United States requests that his sentence be reduced to

301 months, which is about twenty-five years.  Having carefully considered all arguments

presented, and having reviewed the factors in § 3553(a), the court now grants Mr. Maumau's

motion to reduce his sentence and resentences Mr. Maumau to time served.

## ANALYSIS

Under § 3582(c)(1)(A), after finding that extraordinary and compelling reasons warrant a

sentence reduction, the court must "consider[] the factors set forth in section 3553(a) to the

extent that they are applicable" to determine what type of new sentence to impose.

That provision identifies seven factors for the court to review:

(1) the nature and circumstances of the offense and the history and characteristics
of the defendant;

(2) the need for the sentence imposed—

    (A)  to reflect the seriousness of the offense, to promote respect for the
law, and to provide just punishment for the offense;

    (B)  to afford adequate deterrence to criminal conduct;

    (C)  to protect the public from further crimes of the defendant; and

    (D)  to provide the defendant with needed educational or vocational
training, medical care, or other correctional treatment in the most
effective manner;

(3) the kinds of sentences available;

---

[1] Mr. Maumau is currently being held at the Salt Lake County Adult Detention Center ("ADC").  On the morning of the hearing, the court received notice from the U.S. Marshals that Mr. Maumau would be unable to participate in the hearing by phone because he had been placed in quarantine, as part of the ADC's efforts to prevent the spread of the COVID-19 virus.  Mr. Maumau's counsel asked the court to continue without the presence of Mr. Maumau, and consistent with Rule 43(b)(4) of the Federal Rules of Criminal Procedure, the court granted the request.

    (4) the kinds of sentence and the sentencing range established . . . in the
        guidelines . . . ;

    (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;

    (6) the need to avoid unwarranted sentence disparities among defendants with
        similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

§ 3553(a)(1)-(7).

### A. Factors 3 & 4: Available Sentences and Applicable Guideline Range

Mr. Maumau was convicted of three counts of Using or Carrying a Firearm During a

Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A). At the time of his trial, the

mandatory minimum sentence for these three counts was fifty-five years, to be served

consecutively with any other sentence.[2]

Congress subsequently altered these mandatory minimums as part of the First Step Act.

See Pub. L. No. 115-391, 132 Stat. 5194, 5221-22 (Dec. 21, 2018). Both parties agree that if Mr.

Maumau committed the same crimes today, he would still be charged with three counts of

violating § 924(c)(1)(A) and each count would carry a mandatory minimum sentence of five

years to run consecutively. (See U.S. Re-Sentencing Mem. at 6[3] (ECF No. 1750); Maumau

Resentencing Mem. at 7 n.7 (ECF No. 1753).) This conclusion is supported by cases from both

the Third and Fourth Circuits. See United States v. Hodge, 948 F.3d 160, 161 n.2 (3d Cir. 2020);

United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020) (accord). It is also consistent with the

conclusion reached by most courts that have resentenced individuals under the same

---

[2] Mr. Maumau was originally sentenced to fifty-seven years, but this sentence was subsequently reduced in light of the Supreme Court decision in Alleyne v. United States, 570 U.S. 99 (2013). (ECF No. 1538.)

[3] The United States actually suggests it would be three 7-year sentences, rather than three 5-year sentences, because Mr. Maumau brandished a gun during each crime. But that issue was never presented to the jury, which is why his original fifty-seven-year sentence was reduced to a fifty-five-year sentence.

compassionate release procedure that Mr. Maumau now invokes.  See, e.g., United States v. O'Bryan, Case No. 96-10076-03-JTM, 2020 WL 869475 (D. Kan. Feb. 21, 2020) (the sentence for two violations of § 924(c)(1)(A) would be ten years if sentencing occurred today); United States v. Urkevich, Case No. 8:03-cr-37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019) (the sentence for three violations of § 924(c)(1)(A) would be fifteen years if sentenced today); United States v. Redd, Case No. 1:97-cr-0006-AJT, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020) (same); United States v. Bryant, Case No. 95-202-CCB-3, 2020 WL 2085471 (D. Md. April 30, 2020) (same).

Accordingly, in resentencing Mr. Maumau, the court recognizes that he would face a fifteen-year mandatory minimum sentence if sentenced today.

Mr. Maumau was also convicted of one count of Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d); one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and three counts of Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(3).  At the time of sentencing, these counts cumulatively carried a sentencing guideline range of 121 months to 151 months.  That guideline range remains the same today. Because of the length of Mr. Maumau's mandatory minimum sentence, the court originally imposed no sentence for any of these counts.

In crafting a new sentence for Mr. Maumau, the third and fourth factors of § 3553(a) require that this court take into account both the new mandatory minimum sentence of fifteen years for the § 924(c) counts and the sentencing guideline range of 121 to 151 months for the other counts.  But the parties agree that this is simply one factor to consider; the court is not obligated by law to impose a sentence of fifteen years or more.  Although the United States continues to object to the court's conclusion that there is an extraordinary and compelling reason

to grant relief, it agrees that generally, once a court has made that finding, "the court would then be entitled to fashion a new sentence that is consistent with both the purposes of the identified compassionate release criterion and the 3553 factors as a whole." (U.S. Suppl. Brief at 2 (ECF No. 1757).)

A similar conclusion was recently reached in United States v. Defendant(s), Case No. 2:99-cr-00257-CAS-3, 2020 WL 1864906 (C.D. Cal. April 13, 2020.) There, the defendant had originally been sentenced to 877 months in prison, and had served 243 months of that sentence, when she moved to reduce her sentence. The court concluded that if the defendant were sentenced today, her sentence would have been 337 months. The court issued a tentative ruling in which it indicated that it did not believe that a sentence of 337 months was appropriate under the § 3553 factors, and it asked the parties to address at oral argument "(i) the legal basis, if any, that warrants further reducing [the defendant's] term of imprisonment beyond a reduction to 337 months; and (ii) how requiring [the defendant], who has already served 243 months of her sentence, to serve an additional 94 months in prison is consistent with the factors set forth in § 3553(a)." Id. at *7. At oral argument, the United States urged the court to hold that there were no extraordinary or compelling reasons to reduce the sentence at all. But to the extent the court made that finding, the United States

> acknowledged that the Court had legal authority to reduce [the defendant's] sentence beyond a reduction to 337 months up to and including compassionate release for time served. The government also stated that it would not object to compassionate release for time served, that such release would be consistent with the factors set forth in § 3553(a), and that there was no need to require [the defendant] to serve an additional 94 months in prison, provided she remain subject to three years of supervised release.

Id. Based on these concessions, the court ordered the defendant released. Id. at *8.

The same logic applies here.  Because the court has already found extraordinary and compelling reasons, the sentence Mr. Maumau would receive if convicted today is a relevant factor to consider, but it is not determinative.

### B.  Factor 6: Sentencing Disparities

While the previous factors weigh in favor of a higher sentence for Mr. Maumau, factor six is essentially neutral.  The court is required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  <u>See</u> § 3553(a)(6).  This factor cuts both ways.  On the one hand, imposing a sentence of fifteen years would mean that Mr. Maumau would be subjected to a longer sentence than his codefendants, many of whom engaged in substantively similar misconduct but received shorter sentences due to their respective plea deals.  This creates an unwarranted sentencing disparity with those Defendants.

On the other hand, imposing a sentence of less than fifteen years would mean that Mr. Maumau is faring better than other defendants who are convicted of the same crimes today. Allowing Mr. Maumau to serve a shorter amount of time than comparable defendants today would also create a sentencing disparity.  Because a disparity will exist no matter how the court proceeds, this factor provides little guidance.

### C.  Factors 5 & 7: Policy Statements and Victim Restitution

Factors five and seven are mostly irrelevant to the court's analysis.  Neither party points to any policy statements that the court should consider in resentencing Mr. Maumau.  In any event, it is likely that any such statements would be outdated, because as discussed in this court's previous order, the United States Sentencing Commission has not updated its policy statements to conform to passage of the First Step Act.  <u>See</u> <u>Maumau</u>, 2020 WL 806121 at *1 n.3.

Similarly, neither party discusses what impact, if any, the need to provide restitution to victims should have on resentencing Mr. Maumau.[4]

### D.  Factors 1 & 2: The Defendant, the Offense, and a Just Punishment

Finally, the remaining factors mostly support sentencing Mr. Maumau to time served. The court is required to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant [and]

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

§ 3553(a)(1)-(2).

First, while the court does not want to diminish the severity of Mr. Maumau's offenses, it is worth acknowledging that no one was injured during his crimes.  The court also recognizes that although Mr. Maumau was convicted of eight different counts, the manner in which he was charged in some ways makes Mr. Maumau's crimes appear worse than they were.  After all,

---

[4] In his motion, Mr. Maumau argues that "the victim of one of Maumau's crimes, Mr. Jaehen Cho, who was a witness at the trial, has voiced support for sentencing relief for [Mr.] Maumau.  Mr. Cho agrees that [Mr.] Maumau deserves a chance to be released from prison."  (Mot. at 11 (ECF No. 1735).)  But it does not appear that Mr. Maumau has submitted any letter or affidavit from Mr. Cho regarding these sentiments.

seven of those eight counts actually arose from just three robberies.[5]  In other words, in at least some sense, Mr. Maumau is being punished multiple times for the same conduct.

Mr. Maumau was twenty years old at the time he committed the robberies.  On the one hand, that means he was legally an adult, who cannot entirely blame his youth or immaturity for his actions.  On the other hand, the court agrees that Mr. Maumau's age and maturity today support the conclusion that he is less likely to become a recidivist.  The court does not believe Mr. Maumau is likely to engage in dangerous conduct again.  The court does not believe his release would place the public at risk.

Mr. Maumau has a strong support network outside of prison.  Letters received by the court from family members, friends, and professional acquaintances demonstrate that Mr. Maumau is a hardworking, intelligent man with the potential to contribute positively to his community.  Mr. Maumau has pending opportunities for employment and higher education.  The court is particularly concerned that those offers may not be available if he were to remain in prison for five or ten more years.

The court is also particularly struck by the fact that, at the time of Mr. Maumau's trial, the United States offered him a plea deal that would have required only ten years in prison. This suggests that the United States itself believed at the time that a ten-year sentence would satisfy "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,] [and] to afford adequate deterrence to criminal conduct."  § 3553(a)(2).  The United States has not adequately explained its change in perspective.  Mr. Maumau's prison records, although not perfect, are not severe

---

[5] The remaining count, for Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d), arose from his three robberies as well as his membership in the Tongan Crip Gang more generally.

enough to justify the shift in the United States' recommendation from ten years to twenty-five years.  (See U.S. Re-Sentencing Mem. at 1, 7, ECF No. 1750.)

At least two courts have recently found a plea agreement's proposed sentence relevant to a resentencing decision.  See United States v. Haynes, Case No. 93 CR 1043 (RJD), 2020 WL 1941478 at *17 (E.D.N.Y. April 22, 2020) (reducing a sentence in part because a defendant's original sentence went "far beyond what the United States Attorney determined was a suitable sentencing range when offering [the defendant] a plea, far beyond what Congress ever intended, as its recent clarification makes clear, and far beyond what the law now permits."); United States v. Mark, Case No. 03-CR-6033L, 2020 WL 1908911 at *16 (W.D.N.Y. April 20, 2020) ("The Court is not suggesting that a defendant can refuse a plea offer, and then years later, having received a stiffer sentence than what he was offered, retroactively 'accept' the offer.  The point is that the Government's prior willingness to consider a 20-year plea deal undercuts its present argument that Marks is too dangerous to be released before the end of his current 40-year sentence.") (appeal docketed, Case No. 20-1404 (2d Cir. April 23, 2020)).

All of these facts weigh in favor of releasing Mr. Maumau sooner rather than later.

## CONCLUSION

Mr. Maumau has now spent 125 months in prison.  After careful consideration of the parties' briefs, oral argument, and supplementary materials, and weighing all of the § 3553(a) factors as required by § 3582(c)(1)(A), the court concludes the interests of justice would not be served by prolonging Mr. Maumau's imprisonment.  Mr. Maumau's motion to reduce sentence (ECF No. 1735) is GRANTED.  The court ORDERS that Mr. Maumau's sentence is reduced to time served, to become effective upon his release from quarantine by the ADC officials.[6]

---

[6] At present, Salt Lake County Jail officials estimate that the period of Mr. Maumau's quarantine will end on May 22, 2020.

The terms and conditions of supervised release that were imposed as part of the original judgment remain in effect.

SO ORDERED this 11th day of May, 2020.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge